United States District Court
Southern District of Texas
ENTERED
July 15, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DAVID GREG GONZALES, Plaintiff | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 1:21-cv-125 |
| | § | |
| WILLACY COUNTY SHERIFF'S DEPT., ET AL., DEFENDANTS | § | |
| | § | |
| | § | |

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court is in receipt of pro se Plaintiff David Greg Gonzales's "Motion of Writ of Habeas Corpus" and supporting submissions. *See* Dkt. Nos. 1, 9, 10, 22, 23, 41. A review of Gonzales's submissions reveals that he is attempting to assert civil rights claims against his custodians and a habeas claim. *Id*. The Court will, therefore, construe his Motion of Writ of Habeas Corpus and supporting submissions as a jointly submitted complaint brought pursuant to 42 U.S.C. § 1983 (hereinafter, "Complaint"), and a petition brought pursuant to 28 U.S.C. § 2241 (hereinafter, "Petition"). This Report and Recommendation addresses Gonzales's Petition only.[1] For the reasons provided below, it is recommended that the Court **DISMISS** Gonzales's Petition without prejudice, and **DECLINE** to issue a certificate of appealability.

[1] At the appropriate juncture, the Court will address Gonzales's § 1983 Complaint in a separate Report and Recommendation.

## I. Jurisdiction

The Court should not exercise jurisdiction over Gonzales's Petition for the reasons provided below.

## II. Procedural History

Gonzales initiated this lawsuit by filing his Complaint and Petition on August 17, 2021. Dkt. No. 1. Gonzales names as Defendants the "Willacy County Sheriff's Department, and Jail Administration, et al[.]" *Id.* at 1. On August 23, 2021, the Court issued and Order and Notice. Dkt. No. 5. The Order and Notice informed Gonzales that he had not paid the required filing fee, or filed an application to proceed in forma pauperis, and he had failed to state a claim for relief. *Id.* at 1. In relevant part, the Order and Notice also provided as follows:

> **Gonzales is NOTIFIED that, on or before September 23, 2021, he must file a memorandum which provides the Court with all of the facts supporting his claims. Additionally, on or before September 23, 2021, he is ORDERED pay the filing fee or complete and file an In Forma Pauperis Application**. The Clerk of Court is **ORDERED** to send Gonzales the In Forma Pauperis Application form. **Gonzales is NOTIFIED that if he fails to comply with this Order and Notice, his Complaint will be subject to dismissal and the dismissal may count as a strike for purposes of 28 U.S.C. § 1915(g)**. *See* Rules 12(b)(1), 12(b)(6), and 41 of the Federal Rules of Civil Procedure. *See also* 28 U.S.C. § 1915(e)(2) and § 1915(g)

*Id.* at 2 (emphasis in original).

On September 10, 2021, Gonzales filed an "Application to Proceed in District Court Without Prepayment of Fees or Costs" (hereinafter, "In Forma Pauperis Application" or "IFP Application"). Dkt. No. 8. Subsequently, he filed a "Motion in Writ of Facts Supporting Claims in Memorandum of Habeas Corpus 550 of Prisoner's Civil Rights

Violation's" and a "Motion in Writ of Memorandum in Habeas Corpus of Facts in Supporting Claims of Civil Rights Violations" (hereinafter, referred to as his first and second "Supporting Memorandums"). Dkt. Nos. 9 and 10. Gonzales's IFP Application lacked a certified copy of his trust fund account statement (or institutional equivalent), and his first and second Supporting Memorandums did little to clarify his claims.

On December 9, 2021, the Court notified Gonzales that his IFP Application was incomplete and gave him an opportunity to correct his error. *See* Dkt. No. 12. The Court also notified Gonzales that his claims were unclear and ordered him to provide a more definite statement of his claims by January 14, 2022. Dkt. No. 11.

On December 20, 2021, Gonzales filed a "Motion in Writ of Memorandum to Add to Court Transcript of Certified Copy of Inmate 'Trust Fund Account Statement'" and accompanying "Inmate Request Form" (hereinafter, "Trust Fund Account Documents"). Dkt. No. 15 and 15-1. As Gonzales appeared to have submitted sufficient documentation of his inability to pay the filing fee, the Court granted his IFP Application on January 28, 2022. *See* Dkt. No. 17. Gonzales did not, however, comply with the Court's Order and Notice dated December 9, 2021, which directed him to file a more definite statement of his claims in the form of an amended complaint.

In order to give Gonzales one last chance to state a claim for relief, the Court issued an Order and Notice on January 28, 2022. Dkt. No. 16. This Order and Notice gave Gonzales until February 14, 2022 to comply and required Gonzales to sign his claims under penalty of perjury. Gonzales attempted to comply with this Order and Notice by filing a "Motion In Writ To Attach File To Transcript," which contained part of a signed "Prisoner Civil Rights Complaint," and a submission which contained some supporting

documents and the other part of the signed Prisoner Civil Rights Complaint. Dkt. Nos. 22 and 23 (hereinafter, referred to as Gonzales's third and fourth "Supporting Memorandums").

On February 18, 2022, the Court issued an Order which summarized Gonzales's claims, directed the Clerk of Court to issues summons for all named defendants, and ordered the U.S. Marshal's Service to serve those same defendants on or before March 3, 2022. Dkt. No. 24. The Marshal's Service complied but stated that it was unable to serve several of the named defendants because they were no longer employed by the Willacy County Sheriff's Department. *See* Dkt. Nos. 29-32. On June 3, 2022, after receiving an extension (*see* Dkt. Nos. 36-37), Defendants Joe Salazar, Dionicio Cortez, and the "Willacy County Jail Staff" filed an "Answer" responding to Gonzales's claims, as liberally construed by this Court. Dkt. No. 40. Subsequently, Gonzales filed a document entitled, "On Writ in Motion in Support of 1983 42 U.S.C. Civil Complaint" (hereinafter, referred to as Gonzales's fifth "Supporting Memorandum"). Dkt. No. 41.

## III. Discussion

**(A) Gonzales's Allegations.** Gonzales's Complaint, Petition, and five Supporting Memorandums are difficult to decipher. *See* Dkt. Nos. 1, 9, 10. Construing them liberally, Gonzales alleges as follows:

1. On or about June 9, 2021, he turned himself into the Willacy County Sheriff's Department. Dkt. No. 1 at 1-2. He has remained in custody since that date. *Id*; Dkt. No. 9 at 2. When he turned himself in, the Sheriff's Department "and Jail Division" would not allow him to bring his legal paperwork in, even though he is a self-trained lawyer. *Id*.

Additionally, certain individuals within the Sheriff's Department and Jail Division have failed to provide him with access to an "adequately staffed" law library. Dkt. No. 9 at 2.[2] Either these individuals, or the State of Texas, have also wrongfully charged him approximately "$52.30" for "Law Library in Willacy County Filing Costs." *Id.* at 3 (errors in original).

2. On or about June 8, 2021, he was arrested at a private address is Raymondville, Texas. Dkt. No. 10 at 2-3.[3] He brought his own Quran into custody, which was in Arabic rather than English. Defendants would not allow him to bring his praying beads, mat, and skull cap into custody. *Id.* When he asked that he be allowed to have these religious items, Sheriff Jose Salazar told him to make his request in writing and that it was "out of his hands." *Id.* at 3. He made the request, but still had to make his own skull cap and praying mat. *Id.* at 3-4.

3. After he wrote to the editor of the "Willacy County Chronicle" regarding certain prisoner rights violations, Chief Jailer Dionicio Cortez called him into his office to mock him. Dkt. No. 10 at 4. Chief Cortez stated, "I have here your religious effects but I will give it to the next Muslim that comes into [this] jail." *Id.* (errors in original). Chief Cortez then laughed at him and made a yelling noise as if to suggest that he was a terrorist. *Id.* Sheriff Salazar also lied and told the "Raymondville Chronicle" newspaper that he had "provided all religious effects upon request." *Id.* at 3.

---

[2] Gonzales identifies these individuals as: (1) Sheriff Jose Salazar; (2) Jail Administrator Dionicio Cortez; (3) former Jail Administrator Rene Ramirez; (4) former "Major" Andy Maldonado; (5) former Detective Andrew Maldonado; and (6) Sergeant Martina Martinez. Dkt. No. 9 at 1-2.

[3] Gonzales states both that he was arrested on June 8, 2021, and that he turned himself in on June 9, 2021. Dkt. No. 1 at 1-2; Dkt. No. 10 at 2-3. He does not claim that he was released after being arrested on June 8, 2021, or otherwise explain how he was able to turn himself in after he had already been arrested.

4. On or about December 5, 2019, Defendants were indifferent to his medical needs. Dkt. No. at 5-6. He suffers from bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety, and depression. *Id.* at 6. Defendants did not allow him to see a psychiatric doctor or allow him to see his medical records or chart. *Id.*

5. On November 22, 2019, while he was "expressing his voice[,]" he was forced into restraints. Dkt. No. 10 at 6-7; Dkt. No. 23 at 3. Specifically, he was placed into a mechanical chair which prevented him from exercising his limbs. Certain Defendants kept him in the chair, with handcuffs and leg chains, for 24 hours. During this time he received no medical evaluation or monitoring. Defendants also failed to document the force they used to control him or provide him with a proper diet. *Id.*

6. Defendants have violated his right to practice his religion. Dkt. No. 1 at 2; Dkt. No. 10 at 2-4. They have also retaliated against him for being a Muslim and a self-trained lawyer. Dkt. No. 1 at 2. His length of confinement demonstrates this retaliation. *Id.* In addition to violating his right to practice his religion and his right to represent himself, Defendants are guilty of violating other civil, criminal, and constitutional provisions. They have inflicted cruel and unusual punishment upon him and used excessive force against him. They have conspired together and otherwise violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. *See generally* Dkt. Nos. 1, 9, 10, 22, 23. For these reasons, he is entitled to preemptive relief and damages, including punitive damages ranging from 1 to 2.5 million dollars. Dkt. No. 9 at 4; Dkt. No. 10 at 8; Dkt. No. 23 at 3.

7. Because his home address is "1687 Hidalgo #A21, Raymondville, TX 78580," he is also innocent of burglarizing this habitation. Dkt. No. 23 at 4. Because he is innocent, the Court should order his release from custody. *Id.* at 2.

**(B) Gonzales's § 2241 Petition**. To the extent that Gonzales is asking to be released from custody because he is innocent of burglary, he is attempting to assert a habeas claim. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (habeas corpus is the exclusive federal remedy available to state prisoners challenging the fact or duration of their confinement and seeking speedier or immediate release from incarceration); *Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994) (release from incarceration is not available in a suit filed pursuant to 42 U.S.C. § 1983). His attempted habeas claim is best categorized as an attempted claim under 28 U.S.C. § 2241 because he has yet to be tried for the charges pending against him. *See* Dkt. No. 1 (containing Gonzales's discussion of his arrest on June 9, 2021 and his subsequent detention); Dkt. No. 40 at 2 ("Plaintiff's most recent admission to the Willacy County Jail began on June 9, 2021; Plaintiff remains in custody awaiting placement in a State Mental Health Facility due to being found incompetent to stand trial in his pending criminal case for two felony counts of burglary of a habitation;"); *In re Gonzales*, No. 13-21-00468-CR, 2022 WL 52640 (Tex. App. Jan. 5, 2022) (denying Gonzalez's petition for mandamus relief in his state criminal and civil cases, noting that both cases were still pending before the trial court); *Hartfield v. Osborne*, 808 F.3d 1066, 1071–72 (5th Cir. 2015) (explaining that § 2241 is the vehicle for challenging pretrial detention, whereas a § 2254 petition is the vehicle for attacking the validity of a state conviction and sentence).

The Court should decline to exercise jurisdiction over Gonzales's Petition pursuant to the abstention doctrine outlined in *Younger v. Harris*, 401 U.S. 37 (1971). In *Younger v. Harris*, the Supreme Court articulated a policy against federal interference with state criminal prosecutions based upon principles of comity, equity, and federalism. *Id*. at 43-55. Under the *Younger* abstention doctrine, federal courts must decline to interfere with state criminal proceedings "except in extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Rodriguez v. Salazar*, No. SA-19-CV-1289-XR, 2019 WL 5624756, at *1 (W.D. Tex. Oct. 31, 2019) (citing *Younger v. Harris*, 401 U.S. 37, 45). In *Wightman v. Texas Supreme Court*, the Fifth Circuit Court of Appeals held that *Younger* requires a federal district court to abstain from exercising jurisdiction over a dispute when: (1) the dispute involves ongoing state judicial proceeding, (2) the subject matter of the dispute implicates important state interests, and (3) the ongoing state judicial proceedings afford adequate opportunities for the raising of constitutional challenges. 84 F.3d 188, 189 (5th Cir. 1996).

Here, Gonzales's Petition only seeks release from Defendants' custody on the grounds that he is innocent of charges currently pending against him. *See* Dkt. No. 23 at 2, 4. The State of Texas has an important interest in enforcing its laws and regulations. Gonzales has adequate opportunities to raise any constitutional claims that he may have in his ongoing state judicial proceedings. Exercising jurisdiction over Gonzales's Petition would interfere with those proceedings. Gonzales has also failed to show that he is danger of great and immediate irreparable loss. *See generally* Dkt. Nos. 1, 9, 10, 22, 23, 41. Accordingly, this Court should abstain from exercising jurisdiction under the *Younger* abstention doctrine and dismiss Gonzales's Petition without prejudice. *See Younger v.*

*Harris*, 401 U.S. 37, 45; *Rodriguez v. Salazar*, No. SA-19-CV-1289-XR, 2019 WL 5624756, at *1-2.

Further, as Defendants point out (*see* Dkt. No. 40 at 6), Gonzales has not shown that he has exhausted all state remedies available to him. *See generally* Dkt. Nos. 1, 9, 10, 22, 23, 41. A state § 2241 petitioner must exhaust all available state remedies before they may proceed in federal court. *Rodriguez v. Salazar*, No. SA-19-CV-1289-XR, 2019 WL 5624756, at *1 (citing *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973)).

> Although exhaustion of state remedies is mandated by statute only for post-trial habeas claims under 28 U.S.C. § 2254(b), well-established Fifth Circuit precedent holds that the federal courts should abstain from exercising jurisdiction over pretrial habeas claims if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner.

*Id.* (citing *Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir. 1987) and *Brown v. Estelle*, 530 F.2d 1280, 1284 (5th Cir. 1976)); *see also Brown v. Estelle*, 530 F.2d at 1280, 1283 (noting that pretrial detainees generally may not obtain dismissal of pending states charges under § 2241). For all the foregoing reasons, Gonzales's Petition should be dismissed without prejudice.

## IV. Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Said

another way, where claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Where claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Gonzales has not made a substantial showing of the denial of a constitutional right.

## V. Recommendation

For the foregoing reasons, it is recommended that the Court **DISMISS** Gonzales's Petition without prejudice, and **DECLINE** to issue a certificate of appealability.

## VI. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **15th** day of **July**, **2022**, at Brownsville, Texas.

**Ignacio Torteya, III**
**United States Magistrate Judge**