United States District Court
Southern District of Texas
**ENTERED**
August 01, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAVID GREG GONZALES, Plaintiff | § § § § | |
| | § | Civil Action No. 1:21-cv-125 |
| v. | § § § | |
| WILLACY COUNTY SHERIFF'S DEPARTMENT AND JAIL, et al Defendants | § § § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court is in receipt of Plaintiff David Gonzales's pro se "Petition for Writ of Habeas Corpus" and supporting submissions (Dkt. Nos. 1, 9, 10, 22, 23, 41), which the Court has previously construed as a jointly submitted complaint brought pursuant to 42 U.S.C. § 1983 (hereinafter, collectively, "Complaint"), and a petition brought pursuant to 28 U.S.C. § 2241 (hereinafter, "Petition"). *See* Dkt. No. 43 at 1. Defendants Joe Salazar and Dionicio Cortez filed a "Motion to Dismiss Pursuant to Rule 12 and Alternatively Motion for Summary Judgment." Dkt. No. 80. Defendants Willacy County Jail Staff, Rene Ramirez, Andres Maldonado, and Andres Davi Maldonado filed a "Motion to Dismiss Pursuant to Rule 12 and Alternatively Motion for Summary Judgment and Motion to Stay or Bar Discovery." Dkt. No. 84. For the reasons provided below, it is recommended that the Court: (1) **GRANT** the Defendants' Motions to Dismiss; (2) **DISMISS WITH PREJUDICE** Plaintiff's claims against all Defendants; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

1

### I.     Jurisdiction and Venue

The Court has federal question subject matter jurisdiction because Gonzales has alleged violations of 42 U.S.C. § 1983.  *See* Dkt. Nos. 1, 9, 10, 22, 23, 41; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Venue is proper in this District and Division because a substantial portion of the alleged events giving rise to Gonzales's lawsuit occurred here.  *See* Dkt. Nos. 1, 9, 10, 22, 23, 41 (describing actions occurring in Willacy County, Texas); 28 U.S.C. § 124(b)(4) ("The Brownsville Division comprises the counties of Cameron and Willacy."); 28 U.S.C. § 1391(b)(2) (noting that a civil action may be brought in the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred").

### II.     Background

#### A. Relevant Procedural History

On August 17, 2021, Gonzales filed his Complaint and Petition.  Dkt. No. 1. Gonzales named as Defendants the "Willacy County Sheriff's Department, and Jail Administration, et al".  *Id*. at 1.  On August 23, 2021, the Court informed Gonzales that he had not paid the required filing fee or filed an application to proceed *in forma pauperis*, and that he had failed to state a claim for relief.  Dkt. No. 5 at 1.  The Court ordered Gonzales to file a memorandum with facts supporting his claims and to pay the filing fee or complete an *in forma pauperis* application ("IFP application").  *Id*. at 2.

On September 10, 2021, Gonzales filed an IFP application.  Dkt. No. 8.  He then filed two supporting memorandums—the "Motion in Writ of Facts Supporting Claims in Memorandum of Habeas Corpus 550 of Prisoner's Civil Rights Violation's" and, on

September 14, 2021, the "Motion in Writ of Memorandum in Habeas Corpus of Facts in Supporting Claims of Civil Rights Violations". Dkt. Nos. 8-10. On December 9, 2021, the Court notified Gonzales that his IFP application was incomplete and gave him an opportunity to supplement it. Dkt. No. 12. The Court also notified Gonzales that his claims were unclear and ordered him to provide a more definite statement of the claims. Dkt. No. 11.

On December 20, 2021, Gonzales filed a "Motion in Writ of Memorandum to Add to Court Transcript of Certified Copy of Inmate 'Trust Fund Account Statement'" and "Inmate Request Form". Dkt. Nos. 15, 15-1. On January 28, 2022, the Court granted his IFP Application and ordered him to file an amended complaint using the Prisoner Civil Rights Complaint form. Dkt. Nos. 16, 17. On February 15, 2022, Gonzales filed an additional supporting memorandum, entitled "Motion in Writ to Attach File to Transcript", which contained part of a signed Prisoner Civil Rights Complaint and supporting documents as well as the other part of the complaint. Dkt. Nos. 22, 23.

On February 18, 2022, the Court summarized Gonzales's claims and directed the Clerk of Court to issue summons for the named defendants, including: (1) Sheriff Jose Salazar; (2) Jail Administrator Dionicio Cortez; (3) former Jail Administrator Rene Ramirez; (4) former "Major" Andy Maldonado; (5) former Detective Andrew Maldonado; (6) Sergeant Martina Martinez; and (7) Willacy County Sheriff's Department and "Jail Administration." Dkt. No. 24.[1] On June 3, 2022, after receiving an extension (*see* Dkt. Nos. 36-37), Defendants Salazar, Cortez, and the Willacy County Jail Staff filed their answer. Dkt. No. 40. Subsequently, on July 8, 2022, Gonzales filed another supporting

---

[1] The Court notes that although summons was issued, Defendant Martinez was not able to be served. Dkt. No. 32.

3

document, entitled "On Writ in Motion in Support of 1983 42 U.S.C. Civil Complaint". Dkt. No. 41.

On July 15, 2022, the Court construed Gonzales's Motion of Writ of Habeas Corpus and supporting submissions as a jointly submitted complaint brought pursuant to 42 U.S.C. § 1983 and a petition brought pursuant to 28 U.S.C. § 2241. Dkt. No. 42. A Report and Recommendation to dismiss Gonzales' Petition and decline to issue a certificate of appealability was adopted by the Court on September 15, 2022. Dkt. Nos. 43, 60. On July 18, 2022, Gonzales filed a motion seeking discovery. Dkt. No. 45. On July 28, 2022, Defendants Salazar, Cortez, and Willacy County Jail Staff moved to strike Gonzales's motion for discovery as well as a motion seeking to amend his claims (Dkt. No. 41). Dkt. No. 51. On August 30, 2022, the Court denied Gonzales's motions, finding that he did not obtain leave of court to amend his claims and that he failed to demonstrate an entitlement to discovery at that juncture. Dkt. No. 55. The Court also denied Defendants' motion as moot. *Id.*

Following the resolution of various issues with service and representation (*see* Dkt. Nos. 58, 62, 63, 67- 71), on November 14, 2022, Defendants Salazar, Cortez, Willacy County Jail Staff, and Ramirez filed an amended answer to Gonzales's complaint and supporting submissions. Dkt. No. 73.[2] On November 23, 2022, Defendants Salazar, Cortez, Willacy County Jail Staff, and Ramirez filed a second amended answer. Dkt. No. 75. On March 28, 2023, Defendants Salazar and Cortez filed their "Motion to Dismiss

---

[2] The Court notes that, to the extent that Defendants Salazar, Cortez, and Willacy County Jail Staff filed an amended answer to Gonzales's complaint, the amended answer was not authorized by the Court. Fed. R. Civ. P. 15(a) (emphasis added) ("A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. **In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.** The court should freely give leave when justice so requires.")

4

Pursuant to Rule 12 and Alternatively Motion for Summary Judgment". Dkt. No. 80. On March 31, 2023, Defendants Salazar, Cortez, Willacy County Jail Staff, Ramirez, Maldonado, and Maldonado filed their answer to Gonzales's complaint and supporting submissions. Dkt. No. 81.³ On April 20, 2023, Defendants Willacy County Jail Staff, Ramirez, Maldonado, and Maldonado filed their "Motion to Dismiss Pursuant to Rule 12 and Alternatively Motion for Summary Judgment and Motion to Stay or Bar Discovery" as well as sealed exhibits. Dkt. Nos. 84, 85.⁴ On May 19, 2023, the Court stayed discovery pending the Court's consideration and ruling on Defendants' Motions. Dkt. No. 86.

The Court finds that it would be premature to grant summary judgment at this juncture before discovery has begun. *See George v. GO FRAC, LLC*, No. SA-15-CV-943, 2016 WL 94146, at *3 (W.D. Tex. Jan. 7, 2016) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)) (finding that the "Supreme Court has made clear that the granting of summary judgment is limited until there has been 'adequate time for discovery.'"). Accordingly, to the extent that Defendants' motions seek summary judgment review, this request should be denied without prejudice.

---

³ Again, to the extent that Defendants Salazar, Cortez, Willacy County Jail Staff, and Ramirez filed an amended answer to Gonzales's complaint, the amended answer was not authorized by the Court. Fed. R. Civ. P. 15(a).

⁴ Defendants responded to Gonzales's complaint by filing answers prior to filing their motions to dismiss. Consequently, the Court finds that Defendants' motions to dismiss are untimely under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6) (emphasis added) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted . . . **A motion asserting any of these defenses must be made before pleading** if a responsive pleading is allowed.") However, the Court's analysis does not end here. "[A] defense of failure to state a claim upon which relief can be granted may also be raised by a Rule 12(c) motion." *Young v. City of Hous.*, 599 F. App'x 553, 554 (5th Cir. 2015) (citing Fed. R. Civ. P. 12(h)). Motions to dismiss that are untimely pursuant to Rule 12(b)(6) should be construed as motions for judgment on the pleadings under Rule 12(c). *Id.* "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pleadings are closed "once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). Here, although Defendants' motions to dismiss are untimely, they should be construed as motions for judgment on the pleadings under Rule 12(c).

## B. Gonzales's Complaint and Supporting Submissions

1. Factual Allegations

Gonzales's Complaint and supporting submissions are difficult to decipher. Construing them liberally, Gonzales alleges the following:[5]

On or about June 9, 2021, he turned himself in to the Willacy County Sheriff's Department. Dkt. No. 1 at 1-2. When he turned himself in, the Sheriff's Department "and Jail Division" would not allow him to bring his legal paperwork in, even though he is a self-trained lawyer. *Id.*; Dkt. No. 9 at 2. Additionally, certain individuals within the Sheriff's Department and Jail Division have failed to provide him with access to an "adequately staffed" law library. Dkt. No. 9 at 2.[6] Either these individuals, or the State of Texas, have also wrongfully charged him approximately "52.30" for "Law Library in Willacy County Filing Costs." *Id.* at 3 (errors in original).

On or about June 8, 2021, Gonzales was arrested at a private address in Raymondville, Texas. Dkt. No. 10 at 2-3. He brought his own Quran into custody, which was in Arabic rather than English. *Id.* Defendants would not allow him to bring his praying beads, mat, and skull cap into custody. *Id.* When he asked that he be allowed to have these religious items, Sheriff Salazar told him to make his request in writing and that it was "out of his hands." *Id.* at 3. He made the request, but still had to make his own skull cap and praying mat. *Id.* at 3-4.

After Gonzales wrote to the editor of the "Willacy County Chronicle" regarding certain prisoner rights violations, Chief Jailer Cortez called him into his office to mock

---

[5] The Court omits allegations related solely to the Petition, which has previously been dismissed. Dkt. Nos. 43, 60.
[6] Gonzales identifies these individuals as: (1) Sheriff Salazar, (2) Jail Administrator Cortez, (3) former Jail Administrator Ramirez, (4) former "Major" Andy Maldonado, (5) former Detective Andrew Maldonado, and (6) Sergeant Martina Martinez.

6

him. Dkt. No. 10 at 4. Chief Cortez stated, "I have here your religious effects but I will give it to the next Muslim that comes into [this] jail." *Id.* (errors in original). Chief Cortez then laughed at him and made a yelling noise as if to suggest that he was a terrorist. *Id.* Sheriff Salazar also lied and told the "Raymondville Chronicle" newspaper that he had "provided all religious effects upon request." *Id.* at 3.

On or about December 5, 2019, Defendants were indifferent to his medical needs. Dkt. No. 10 at 5-6. He suffers from bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety, and depression. *Id.* at 6. Defendants did not allow him to see a psychiatric doctor or allow him to see his medical records or chart. *Id.*

On November 22, 2019, while he was "expressing his voice[,]" he was forced into restraints. Dkt. No. 10 at 6-7; Dkt. No. 23 at 3. Specifically, he was placed into a mechanical chair which prevented him from exercising his limbs. *Id.* Certain Defendants kept him in the chair, with handcuffs and leg chains, for 24 hours. *Id.* He received no medical evaluation or monitoring during this time. *Id.* Defendants failed to document the force used to control him or provide him a proper diet. *Id.*

Defendants have violated his right to practice his religion. Dkt. No. 1 at 2; Dkt. No. 10 at 2-4. They have also retaliated against him for being Muslim and a self-trained lawyer. Dkt. No. 1 at 2. His length of confinement demonstrates that retaliation. *Id.* In addition to violating his right to practice his religion and his right to represent himself, Defendants are guilty of violating other civil, criminal, and constitutional provisions. They have inflicted cruel and unusual punishment upon him and used excessive force against him. They have conspired together and otherwise violated his rights under the First, Sixth, Eight, and Fourteenth Amendments to the United States Constitution. *See generally* Dkt. Nos. 1, 9, 10, 22, 23. For these reasons, he is entitled to preemptive relief

and damages, including punitive damages, ranging from 1 to 2.5 million dollars. Dkt. No. 9 at 3; Dkt. No. 10 at 8; Dkt. No. 23 at 3.

    2.  Causes of Action

As previously stated, Gonzales's pleadings are difficult to decipher. He appears to assert that various prison officials have discriminated against him and caused him harm during his periods of confinement. While he does not articulate what specific causes of action he asserts against the named defendants, based on a liberal construction of the pleadings the Court can discern the following claims: deprivation of property, denial of access to the courts, violation of his right to free exercise of religion, cruel and unusual punishment, excessive force and failure to document the use of force, and deliberate indifference to his serious medical condition.

### III.   Legal Standards

**A. Federal Rules of Civil Procedure 12(b)(6) and 12(c)**

"The standard for deciding a motion under [Federal Rule of Civil Procedure 12(c)] is the same as the one for deciding a motion to dismiss under Rule 12(b)(6)." *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-cv-4997-D, 2015 WL 1757358, at *1 (citing *Green Plains Trust Co. v. Morgan Stanley Dean Witter & Co*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002)).

Dismissal is appropriate under Rule 12(b)(6) if the claimant fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a). *Richter v. Nationstar Mortgage, LLC*, No. H-17-2021, 2017 WL 4155477, at *3 (S.D. Tex. Sept. 19, 2017) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*,

556 U.S. 662, 678-80 (2009)). Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This entails "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citation omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Court must accept all well-pleaded facts in the complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Pena Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). A claim will survive an attack under Rule 12(b)(6) if the well-pleaded facts allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

### B. 28 U.S.C. § 1915

Pursuant to the Prisoner Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2), 1915A ("PLRA"), a court shall dismiss the complaint of any prisoner complaining about violations of federal law if the complaint is frivolous or malicious, or if it "fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997(e)(c)(1).

Section 1915A of Title 28 similarly provides for the early screening and dismissal of frivolous prisoner lawsuits. In relevant part, § 1915A provides:

> (a) Screening—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or office or employee of a governmental entity.
>
> (b) Grounds for dismissal—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1)

> is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b). Likewise, § 1915(e)(2)(B) of Title 28 provides that, regardless of whether a prisoner has paid any portion of a filing fee, a court shall dismiss the prisoner's case at any time if it finds that the case (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A claim is frivolous if it has no arguable basis in law or fact, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). A dismissal for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, the Court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal citations omitted).

A pro se plaintiff's pleadings are "to be liberally construed" and no matter how "inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Notwithstanding, this "does not exempt [the pro se] party from compliance with the relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981).

### C. 42 U.S.C. § 1983

Section 1983 of Title 42 provides a cause of action against any person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States

or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983, however, "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S.137, 144 n. 3 (1979). To establish a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). This right of access, however, is not unlimited, and involves "only a reasonably adequate opportunity to file non-frivolous legal claims challenging convictions or conditions of confinement." *Id.* (internal citation omitted). "[T]he Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). In order to state a claim, a plaintiff must "demonstrate that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (internal citation omitted). This requirement entails that a claimant show "actual injury". *Lewis v. Casey*, 518 U.S. 351, 354 (1996).

## IV. Discussion

To avoid duplicative analysis, the Court conducts its screening of Gonzales's complaint along with its consideration of the arguments raised by Defendants' motions to dismiss, under both § 1915 and Rule 12(b)(6).

### A. Deprivation of Property

Gonzales alleges that the Willacy County Sheriff's Department improperly forbid him from bringing his legal paperwork or prayer beads, mat, and skull cap into custody when he turned himself in. Dkt. No. 9 at 2; Dkt. No. 10 at 2-3. These claims are governed by the *Parratt/Hudson* doctrine, which establishes that the unauthorized deprivation of a prisoner's property by a State actor does not violate the prisoner's due process rights where the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

Texas courts provide an adequate post-deprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir. 1986). Further, the Texas state administrative and judicial systems also provide an adequate state post-deprivation remedy for property removed from prisoners. *See* Tex. Gov. Code § 501.007; *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Because Texas courts afford adequate post-deprivation remedies, a prisoner cannot bring a § 1983 claim for the confiscation of property. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Rather, the appropriate forum for such a claim is in a Texas state court. Accordingly, Gonzales's claim for deprivation of property should be dismissed.

## B. Denial of Access to the Courts

Gonzales asserts that certain individuals within the Willacy County Sheriff's Department and Jail Division failed to provide him with access to an "adequately staffed" law library. *See* Dkt. No. 9 at 2; *supra* p. 6. He also contends that he was improperly charged $52.30 for use of the law library. Dkt. No. 10 at 2-3. Defendants argue that his claims are conclusory and insufficient. Dkt. No. 80 at 10.

The Constitution guarantees prisoners a right of access to the courts that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). The right of access to the courts, however, is not an "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar is some theoretical sense . . . [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351. *See also Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) ("[T]he Supreme Court has not extended [the right of access] to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court.").

To prevail on a claim for denial of access to courts, a plaintiff must demonstrate that he lost an actionable claim or was prevented from presenting such a claim due to the alleged denial. *Lewis*, 73 F.3d at 356; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (finding that to state a sufficient claim of denial of access to courts, a plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). Without demonstrating an actual injury, a plaintiff lacks the standing to pursue a claim of denial of access to courts. *Lewis*, 73 F.3d at 349. A plaintiff must

13

minimally allege that his ability to pursue a nonfrivolous, arguable legal claim was frustrated. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Gonzales fails to plausibly allege an actual injury related to his denial of access to courts claim. Instead, he only contends that the law library was not adequately staffed. However, he does not allege that he was unable to pursue his legal claims as a result. Critically, he has made many filings in this case, further undermining his denial of access to courts claim. Gonzales also fails to allege a specific injury resulting from his alleged denial of access to courts. To be entitled to § 1983 relief, an inmate must demonstrate that he was prevented from bringing a "nonfrivolous" and "arguable" legal claim. *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009). Gonzales merely complains that the law library was not properly staffed; this alone is not sufficient to state a claim for relief. Accordingly, Gonzales's claim of denial of access to courts should be dismissed.

### C. Exercise of Religion

Gonzales contends that Defendants violated his right to practice his religion. Dkt. No. 1 at 2; Dkt. No. 10 at 2-4. He alleges that Defendants did not allow him to bring his religious effects into custody and, as a result, he had to make his own skull cap and praying mat. Dkt. No. 10 at 2-3. He further claims that Chief Jailer Cortez mocked him and made a yelling noise suggesting he was a terrorist, and stated, "I have here your religious effects but I will give it to the next Muslim that comes into [this] jail." *Id.* at 3-4 (errors in original).

"The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment . . . provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (quoting U.S.

14

Const. amend. I). Prisoners retain their First Amendment right to the exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). They must be afforded "reasonable opportunities" to "exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also Davis v. Davis*, 826 F.3d 258, 265 (5th Cir. 2016).

Notwithstanding, this right is "subject to reasonable restrictions and limitations necessitated by penological goals." *McFaul v. Valenzuela*, 684 F.3d 564, 571-72 (5th Cir. 2012) (internal citation omitted). In addition, the equal protection guarantee does not require that every practice of every religious group be fully accommodated within a prison. *See Freeman v. Tex. Dep't of Crim. Justice*, 369 F. 3d 854, 862-63 (5th Cir. 2004).

Despite the confiscation of his religious effects and claims that he was mocked by Defendant Cortez, Gonzales' allegations do not implicate the Constitution because he does not contend that he was unable to observe his religion in any way. To the contrary, he admits that he was able to bring his own Quran into custody and he was able to make his own prayer mat and skull cap. Accordingly, he has not pleaded sufficient facts to support a viable claim for violation of the free exercise clause. *See Newby v. Pate*, No. 2:06-cv-127, 2007 WL 2791455, at *9 (N.D. Tex. Sept. 4, 2007) (dismissing at screening a First Amendment claim where the inmate's religious materials were confiscated because he did not indicate how his ability to practice his religion was affected).

To the extent that Gonzales contends that Defendants retaliated against him in violation of the First Amendment, by confiscating certain personal property and mocking him because of his Muslim beliefs, these claims also fail to meet the mark.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or

15

her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *see also Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *Morris*, 449 F.3d at 684. In addition, "[c]laims of relationship must . . . be regarded with skepticism." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal citation omitted). An inmate must allege more than a personal belief that he was retaliated against. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (internal citation omitted). Rather, he must show evidence of motivation or, at the very least, "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166.

Gonzales alleges that Defendants have retaliated against him for being Muslim and a self-trained lawyer, and that his length of confinement demonstrates that retaliation. Dkt. No. 1 at 2. However, the law requires Gonzales to sufficiently allege that Defendants intended to retaliate against him based on the exercise of his religious rights; he has failed to do so here. *See McDonald*, 132 F.3d at 231. He also fails to allege specific facts that could demonstrate that, "but for" a retaliatory motive, he would have been treated differently. *Id*. Therefore, his retaliation claim should be dismissed.

For these reasons, Gonzales's claims for violation of the First Amendment free exercise clause should be dismissed.

### D. Excessive Force

Gonzales alleges that on November 22, 2019, excessive force was used against him when he was forced into restraints for 24 hours without medical care or proper diet. Dkt. No. 10 at 6-7. Claims of excessive use of force in prison are governed by the Eighth Amendment which prohibits cruel and unusual punishment, including the "unnecessary


and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 291, 297 (1991) (internal citation omitted). However, not every use of force by a prison guard equates to a constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[T]he Amendment does not reach *de minimis* uses of physical force, provided that such use is not of a sort repugnant to the conscience of mankind." *Id.* at 11.

In determining whether a prison official acted maliciously or sadistically to cause an unnecessary and wanton infliction of pain, courts should consider: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force applied; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 7; *see also Baldwin v. Stadler*, 137 F.3d 836, 839 (5th Cir. 1998). To prevail on an excessive force claim, a plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm." *Eason v. Holt*, 5th Cir. 1996) (internal citation omitted). In addition, an inmate's injury need not be significant to be actionable, but it must be greater than *de minimis*. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

Here, Gonzales alleges that excessive force was used against him, but he fails to state whether he sustained an injury. Because he failed to plead that he suffered a physical injury greater than the *de minimis* standard, there is no need for the Court to analyze the remaining *Hudson* factors, as his claim lacks an arguable basis in law. *Id.* Accordingly, Gonzales's claim for excessive force should be dismissed.

### E. Deliberate Indifference

As previously mentioned, Gonzales complains that he was denied a proper diet or medical care when he was placed in restraints on November 22, 2019. Dkt. No. 10 at 6-7.

Gonzales also claims that on or about December 5, 2019, Defendants were indifferent to his medical needs by preventing him from seeing a psychiatric doctor or his medical records regarding his bipolar disorder, PTSD, anxiety, and depression. Dkt. No. 10 at 5-6.

The Eighth Amendment's prohibition against cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal citation omitted). This prohibition mandates that prisoners be provided with humane conditions, including adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 239 F.3d 660, 664 (5th Cir. 2001). Conditions that cause the "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Hudson*, 503 U.S. at 8-10. A violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Critically, a prison official must both know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837.

To establish a constitutional claim for deliberate indifference to a prisoner's serious medical need, a prisoner must show that an official knew of but disregarded an "excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Under the "subjective recklessness" standard, the plaintiff is not required to "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act

18

despite his knowledge of a substantial risk of serious harm." *Id.* at 842; *see also Domino*, 239 F.3d 752, 755 (5th Cir. 2001).

A plaintiff must demonstrate more than mere negligence, unreasonable response, or medical malpractice. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Instead, he must establish that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009). In addition, "the decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Id.*

As to his claim that he was denied a proper diet, Gonzales never explains what, if any, food he did or did not receive. Rather, he simply makes the conclusory statement that he did not receive a proper diet. This is insufficient to show deliberate indifference. The Court has no information that the food Gonzales received (or did not receive) put him at a substantial risk, or otherwise makes a showing of deliberate indifference. In addition, he has failed to show that any defendant knew of a substantial health risk based on the vague assertion that they failed to provide him a "proper diet."

As to Gonzales' claims that he was not allowed to seek medical care or view his medical records or chart, they also fail and should be dismissed. They are not sufficient as a matter of law to give rise to a constitutional violation. Gonzales fails to provide any instance of a prison official acting in a manner "that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. He does not plead any facts to indicate that any of the defendants ignored his requests for medical care, intentionally treated him incorrectly, or otherwise exhibited deliberate indifference to his

serious medical needs. His claims for deliberate indifference should therefore be dismissed.

## V. Recommendation

For the foregoing reasons, it is recommended that the Court: (1) **GRANT** Defendants' Motions (Dkt. Nos. 80, 84); (2) **DISMISS WITH PREJUDICE** Plaintiff's claims against the defendants[7]; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

## VI. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SIGNED** on this **1st** day of **August, 2023**, at Brownsville, Texas.

_____
Ignacio Torteya, III
United States Magistrate Judge

---

[7] Gonzales's claims against Defendant Martinez, who has not appeared in this action, should also be dismissed for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).